IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. ROBERT LANCE WILSON, D.O., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 CV 10521 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| ILLINOIS DEPARTMENT OF ) | |
| FINANCIAL AND PROFESSIONAL ) | |
| REGULATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Defendants State of Illinois, the Illinois Department of Financial and Professional Regulation ("IDFPR" or the "Department"), its former Director Jay Stewart, its former Director Leonard Sherman, its former Chief Prosecutor Thomas Glasgow, and its former Chief Medical Coordinator Dr. Andrew Gorchynsky, by their attorney Lisa Madigan, the Illinois Attorney General, submit the following memorandum in support of their motion to dismiss the Plaintiff's Fourth Amended Complaint.

**INTRODUCTION**

Most of the claims in the Fourth Amended Complaint are substantially the same as the claims raised by the Second Amended Complaint.[1] These issues have been extensively briefed and argued by the parties, and Defendants will not repeat those arguments here. Accordingly, Defendants incorporate the arguments raised in support of their motions to dismiss the Second Amended Complaint. *See* Dkt. 19, 22, 42, 43.

---

[1] Plaintiff has removed Defendant Glasgow from Count II and Count III, and has removed Dr. Gorchynsky from Count III.

The new claims in the Fourth Amended Complaint are as follows. First, Plaintiff alleges in Count I that Dr. Gorchynsky and Glasgow are liable for causing the wrongful issuance of the *ex parte* summary suspension of Plaintiff's medical license, in violation of Dr. Wilson's Fourth Amendment rights against unreasonable seizure. Dkt. 90 ¶¶ 85-89. This claim fails because the Fourth Amendment does not apply to a license revocation proceeding.

In Count II, Plaintiff claims that Sherman and Stewart are liable for the wrongful continuation of IDFPR's license suspension proceedings after the entry of the temporary *ex parte* summary suspension. *Id.* at ¶¶ 90-98. More specifically, Plaintiff alleges that Sherman and Stewart are liable because they failed to properly supervise the IDFPR employees responsible for conducting the license suspension proceedings. *Id*. ¶¶ 91-94. Similarly, in Count III, Plaintiff alleges that Stewart is liable for "the due process delays in concluding [IDFPR]'s license revocation proceeding" based on his failure to supervise the IDFPR employees responsible for the license revocation proceedings. *Id.* ¶¶ 99-104. Plaintiff's conclusory allegations fail to state a claim against either Sherman or Stewart, and in any case they are protected by absolute immunity.

In Count IV, Plaintiff alleges that Sherman made "false and defamatory statements" (*id*. ¶ 107) and in so doing violated Plaintiff's rights under the due process clause. *Id.* ¶¶ 105-112. This claim fails because Sherman's alleged statement is neither defamatory nor false, and because Plaintiff was provided with an adequate "name clearing hearing." Finally, Count VI adds a state-law malicious prosecution claim against Stewart. *Id.* ¶ 118. This claim fails for the same reasons as discussed in our prior briefing.

In sum, Plaintiff's new claims are as deficient as his existing claims, and the Fourth Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.   Plaintiff's Fourth Amendment claims should be dismissed.**

Plaintiff has amended his complaint to add a Fourth Amendment claim against Dr. Gorchynsky and Glasgow, alleging that the *ex parte* summary suspension of Plaintiff's medical license violated his Fourth Amendment rights against unreasonable seizure. Dkt. 90 ¶¶ 85-89. But the Fourth Amendment does not protect against the suspension or revocation of professional licenses. For example, in *Wyatt v. Keating*, 130 F. App'x 511, 516 (3d Cir. 2005), the Third Circuit held that an insurance agent whose license was revoked did not have a malicious prosecution claim under the Fourth Amendment. The Fourth Amendment did not provide a "broad right to be free from prosecution without probable cause," but instead required a "deprivation of liberty accompanying the prosecution." *Id*. Nor is a professional license a tangible "effect" such that "its revocation constitute[s] a 'seizure' under the Fourth Amendment." *Gustard v. Harris*, No. 2:17–cv–0012, 2017 WL 5900087, at *10 (E.D. Cal. Nov. 30, 2017); *see also Lawrence Baca v. City of Albuquerque*, No. CIV 11-0122, 2011 WL 13285716, at *4 (D.N.M. May 20, 2011) ("[T]o the extent that his claim is based on the seizure of his license or certificate to operate an air care station, Plaintiff fails to state a Fourth Amendment claim for which relief may be granted.").

While the Supreme Court recently held that a plaintiff may bring a malicious prosecution claim under the Fourth Amendment in *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017), such claims are limited to situations in which a "defendant caused a prolonged seizure *of the plaintiff* pursuant to legal process unsupported by probable cause and the criminal proceedings terminated in the plaintiff's favor." *Lovelace v. Gibson*, No. 17-cv-1201, 2017 WL 5196641, *6 (C.D. Ill. Nov. 9, 2017) (emphasis added). Moreover, even if a malicious prosecution claim were allowed

3

under the Fourth Amendment in this case, the elements of a Fourth Amendment malicious prosecution claim are the same as the elements of a malicious prosecution claim under Illinois law. *Powell v. City of Chicago*, No. 17-cv-5156, 2018 WL 1211576, at *3, 4 (N.D. Ill. March 3, 2018). And as discussed in the Defendants' prior briefing, Glasgow is protected by prosecutorial immunity for any malicious prosecution claim under federal or state law. *See* Dkt. 19 at 10-12, Dkt. 43 at 2-4; *see also Tillman v. Burge*, 813 F. Supp. 2d 946, 986 (N.D. Ill. 2011) (Pallmeyer, J.) ("Prosecution is the very definition of a prosecutor's role. Therefore, merely alleging conspiracy to maliciously prosecute with non-immune individuals should not defeat a prosecutor's claim of absolute prosecutorial immunity."). And Plaintiff has failed to state a malicious prosecution claim against Dr. Gorchynsky as well. *See* Dkt. 22 at 9-10, Dkt. 42 at 5-6. Accordingly, Count I should be dismissed as to both Glasgow and Dr. Gorchynsky.

**II. Plaintiff's Supervisory Claims against Sherman and Stewart Should Be Dismissed.**

In Count II, Plaintiff claims that Sherman and Stewart are liable because they failed to properly supervise the IDFPR employees responsible for conducting the license suspension proceedings. Dkt. ¶¶ 91-94. Similarly, in Count III, Plaintiff alleges that Stewart is liable for "the due process delays in concluding [IDFPR]'s license revocation proceeding" based on his failure to supervise the IDFPR employees responsible for the license revocation proceedings. *Id.* ¶¶ 99-104. However, both of these claims should be dismissed both for failure to state a claim and because Sherman and Stewart have absolute immunity for these claims.

First, the Plaintiff has failed to state a claim against either Sherman or Stewart for supervisory liability. Section 1983 does not authorize "supervisory liability"; it creates liability "only for a defendant's personal acts or decisions." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). For a "supervisor to be liable for a constitutional deprivation, he 'must know about

the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" *Tillman v. Burge*, 813 F. Supp. 2d 946, 974 (N.D. Ill. 2011) (Pallmeyer, J.), *quoting Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). This Court has explained the "turn a blind eye" portion of this test as follows:

> Thus, if Baker suspected that constitutional violations were occurring in the TDF, but used a mail sorting scheme in order to avoid learning any details, this ostrich-like behavior might satisfy the requirement that a supervisor can be liable for "know[ing] about the conduct ... [and turning] a blind eye for fear of what they might see." . . . To prevail under the ostrich theory, however, Plaintiff must present evidence that a supervisor suspected that something was wrong and deliberately avoided knowledge of it; an officer cannot be liable for "failure to alleviate a significant risk that he should have perceived but did not" because such a situation does not involve "actual knowledge of a substantial risk of serious harm."

*Davis v. Peters*, 566 F. Supp. 2d 790, 810 (N.D. Ill. 2008) (Pallmeyer, J.) (quotations and citations omitted).

In this case, Plaintiff has alleged no facts that would allow the Court to conclude that either Sherman or Stewart had actual knowledge of a substantial risk that Plaintiff's rights were being violated, or even that they "suspected something was wrong and deliberately avoided knowledge of it." Even Plaintiff's conclusory allegations (which do not meet the plausibility standards of *Twombly* and *Iqbal*) state only that Sherman and Stewart "knew, must have known, or *should have known*" that the Department was (allegedly) violating Plaintiff's rights. Dkt. 90 ¶¶ 92, 101 (emphasis added). But what an official "should have known" cannot "serve as a font of liability"—"[w]hat matters is subjective awareness." *Vetter v. Dozier*, No. 06-cv-3528, 2010 WL 1333315, at *13 (N.D. Ill. Mar. 31, 2010), *citing Farmer v. Brennan*, 511 U.S. 824, 838 (1994).[2] Plaintiff's most specific allegation, that "the *Department* was specifically informed by

---

[2] *See also Boyce v. Obaisi*, No. 13 C 5746, 2015 WL 5462137, at *9 (N.D. Ill. Sept. 16, 2015) ("The relevant inquiry is whether the correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known."); *Brown v. Fairman*, No. 93 C 1870, 1994 WL 92002, at *2 (N.D. Ill. Mar. 18, 1994), *aff'd*, 64 F.3d 665 (7th Cir.

5

Assistant Prosecutor McLaughlin that the Department's charges against Dr. Wilson were without merit" (Dkt. 90 ¶¶ 92, 100 (emphasis added), does nothing to show that either Sherman or Stewart actually knew any such thing. Thus, Plaintiff fails to state a claim against either Sherman or Stewart for supervisory liability, and Counts II and III should be dismissed accordingly.

Moreover, even if these conclusory allegations were sufficient to state a claim, Sherman and Stewart are protected by absolute quasi-judicial immunity for their decisions with respect to Plaintiff's case. *See* Dkt. 19 at 13-15, Dkt. 43 at 4-6. Plaintiff's attempt to transform his claims against Sherman and Stewart into "failure to supervise" claims is "merely an attempt to make an end-run around the immunity that protects judicial officials; allowing such claims to proceed . . . would have the effect of eliminating judicial immunity." *Higdon v. Tusan*, No. 1:15-cv-287, 2017 WL 552779 (N.D. Ga. Feb. 10, 2017); *see also Lavankoff v. Jaroslovsky*, No. C 10-0089, 2010 WL 1265853, at *2 (N.D. Cal. Mar. 30, 2010) (dismissing claims against chief judge of Ninth Circuit for alleged failure to supervise bankruptcy court staff who refused to accept filing).

Similarly, Glasgow and the later prosecutors who decided to continue the administrative proceedings against Plaintiff are protected by absolute prosecutorial immunity for those decisions. *See* Dkt. 19 at 9-12, Dkt. 43 at 2-4. If these prosecutors are protected by prosecutorial immunity, then Plaintiff cannot bring a claim against Sherman and Stewart for failing to supervise them. *See Tobey v. Chibucos*, 890 F.3d 634, 651 (7th Cir. 2018) (where probation officer was protected by quasi-judicial immunity and prosecutor was protected by prosecutorial

---

1995) ("Brown fails to set forth facts which would create an inference that defendants received actual notice or personal knowledge, or that defendants' failure to act constituted deliberate indifference. Thus, Brown has failed to allege sufficient facts to state a viable § 1983 claim giving rise to defendants' supervisory liability."); *Zralka v. Tures*, 708 F. Supp. 948, 950 (N.D. Ill. 1989) (conclusory allegations that police commander knew or should have known of unlawful disposition of police officers, failed to discipline police officers, and was negligent in hiring, training, and supervising officers were boilerplate allegations which were insufficient to state civil rights cause of action against commander).

immunity, supervisory liability claims against their supervisors "must necessarily be dismissed"); *Hamilton v. Daley*, 777 F.2d 1207, 1213 n.5 (7th Cir. 1985) (because absolute immunity protects prosecutorial decisions, supervisors o prosecutors who make these decisions is similarly immune). Accordingly, Counts II and III should be dismissed in their entirety.

### III.   Plaintiff's "Stigma Plus" Claim Should Be Dismissed.

Plaintiff has added a "stigma plus" claim against Sherman based on an allegedly defamatory statement that Sherman made in a television interview in October 1999. However, this claim fails because Sherman's statement was not defamatory and because Plaintiff has already received a "name clearing hearing."

First, a "stigma plus" claim requires that the Plaintiff show that "the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false." *Kennedy v. Smith*, 259 F. App'x 150, 155 (10th Cir. 2007). In this case, though, Sherman's statement about Plaintiff was neither derogatory nor false. The Fourth Amended Complaint alleges that Sherman stated the following in a TV interview in October 1999: "I think he [Dr. Wilson] is always within his rights to come in and say that the danger to the public no longer exists and make his argument." Dkt. 90 ¶ 60. Taken as a whole, this statement simply says that Dr. Wilson was entitled to an administrative hearing, which is both true and not derogatory towards Dr. Wilson. Plaintiff focuses on the phrase "danger to the public" as the *implied* "false and defamatory" statement. Dkt. 90 ¶¶ 60, 106. But the phrase "danger to the public" is merely reflects that the Department had preliminarily determined that Dr. Wilson posed a danger to the public, which is also true. *See* Oct. 9, 1998 Summary Suspension Order, Dkt. 90-2 at 26 "The Director . . . finds that the public interest, safety and welfare imperatively require emergency action to prevent the continued

practice of medicine by Respondent, in that Respondent's actions constitute an *immediate danger to the public*" (emphasis added). A statement that was not false "cannot form the basis for a stigma plus claim, however stigmatizing it might appear to be." *DiBlasio v. Novello*, 413 F. App'x 352, 356 (2d Cir. 2011) (official not liable for stigma plus claim based on statements about investigation and suspension of radiologist).

Moreover, a "stigma plus" claim "cannot survive solely on the basis that the government said something about the plaintiff that is allegedly inaccurate; the claim must be based on a denial of due process to contest the allegedly erroneous statement." *Salazar v. City of Albuquerque*, No. CIV 10–0645, 2014 WL 6065603, at *22 (D.N.M. Oct. 27, 2014); *see also Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006) (holding that, where the plaintiff's protected interest was her reputation and professional interest, a post-deprivation hearing was sufficient to defeat a stigma-plus claim). "When a plaintiff is provided an adequate name-clearing hearing, he cannot maintain a stigma-plus claim." *Salazar*, 2014 WL 6065603, at *41.

In this case, Plaintiff was provided a name-clearing hearing which began November 16, 1999. *Wilson v. Kalelkar*, No. 99 C 6590, Mem. Op. and Order, at 2 (N.D. Ill. Dec. 1, 1999) (Dkt. 90-2 at 48). As a federal court has already determined, Plaintiff "was afforded the right to counsel, as well as the opportunity to present and cross examine witnesses." *Id*. at 4 (Dkt. 90-2 at 50)). This process was sufficient for *Younger* abstention purposes (*id.* at 4-5, 11-12 (Dkt. 90-2 at 50-51, 57-58), and it more than satisfies the due process requirements for a name-clearing hearing. *See Salazar*, 2014 WL 6065603, at *42, *citing Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 526 (10th Cir. 1998) ("The Tenth Circuit has held that a name-clearing hearing is adequate if the plaintiff had the opportunity to produce evidence and cross-examine witnesses."); *Segal*, 459 F.3d at 216 (adequate hearing where plaintiff was provided the "opportunity to

present evidence, call witnesses, cross-examine witnesses, and make an oral presentation through union-selected counsel); *Campbell v. Pierce County, Ga.*, 741 F.2d 1342, 1345 (11th Cir. 1984) (individual must be afforded the opportunity "to support his allegations by argument however brief, and, if need be, by proof, however informal"); *Monserrate v. New York State Senate*, 599 F.3d 148, 159–60 (2d Cir. 2010) (even where plaintiff did not have copies of all evidence, was not able to cross-examine two witnesses, and five of the six sessions were closed to the public, he still received adequate process). While Plaintiff and his counsel "abandoned" the first administrative hearing midway through (*Wilson v. Kalelkar*, Mem. Op. and Order, at 3 (Dkt. 90-2 at 49)), that was Plaintiff's choice, not the Department's. Plaintiff received "a sufficient opportunity to clear his name—and that is all the Constitution requires." *Monserrate*, 599 F.3d at 159–60. Accordingly, Plaintiff's "stigma plus" claim should be dismissed.

### IV. Plaintiff's malicious prosecution claim against Stewart should be dismissed.

Finally, Plaintiff has added Stewart to Count VI, which alleges that Defendants committed the state-law tort of malicious prosecution. But such a claim fails for two reasons. First, Stewart is protected by quasi-judicial immunity for any decision to continue the license revocation proceeding against Dr. Wilson. *See* Dkt. 19 at 13-14, Dkt 42 at 4-6; *see also Buckwalter v. State of Nevada Bd. of Medical Examiners*, 678 F.3d 737, 738, 745-46 (2012) (9th Cir. 2012). Second, Plaintiff's malicious prosecution claim against Stewart should be dismissed pursuant to sovereign immunity for the same reasons discussed with respect to the malicious prosecution claim against Glasgow. *See* Dkt. 19 at 12-13, Dkt. 43 at 6-8.

## CONCLUSION

**Wherefore**, Defendants request that this Court dismiss the Fourth Amended Complaint with prejudice, and provide any other relief this Court deems just and proper.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois     /s/ *Sarah H. Newman* _____
Attorney No. 99000    By: Sarah H. Newman
             Michael Dierkes
             Assistant Attorney General
             General Law Bureau
             100 W. Randolph St., 13th Fl.
             Chicago, Illinois 60601
             312-814-6131 / 312-814-3672
             snewman@atg.state.il.us
             mdierkes@atg.state.il.us

             *Counsel for Defendants*